IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| VAUGHN ROSS, | |
| Petitioner, | |
| VS. | Cause No. 5:08-CV-174-C |
| NATHANIEL QUARTERMAN, Director, Texas Department of Criminal Justice, Institutional Division, | Death Penalty Case |
| Respondent | |

## PETITIONER'S RESPONSE TO RESPONDENT'S ANSWER

**Ineffective Assistance – Failure to investigate Regina Carlisle's Criminal History**

In its Answer the State refers to the Findings of Fact approved by the state's highest court, which state that "Ross did not set forth any facts demonstrating that the defense did not investigate Carlisle's history" for the proposition that counsel was not ineffective. This double negative statement relative to the evidence at the state habeas proceeding completely ignores the fact that Lisa Milstein's affidavit in support of the state writ application explicitly states that nobody from the defense team contacted Carlisle.

The trial record also shows that no investigation was done, as the defense did not question Kevin Knobbe, the police officer from Missouri who testified at trial about Carlisle's claim against Ross, nor did they subpoena Carlisle to develop the context of the offense before the jury. Knobbe could have been asked about whether he knew or had heard about the assaultive conduct and/or criminal convictions that the investigation would have disclosed. The state habeas record

1

is, therefore, clear that either there was no investigation was done or that a horribly flawed trial strategy was implemented. The record before this court makes clear that it was not trial strategy that resulted in Carlisle's record being withheld from the jury, there simply was no effort to investigate the background of this extremely important punishment phase witness. (*See* affidavits of Floyd Holder and Pat Metz, exhibits C and D to the Petition respectively)

Alternatively, the State argues that Ross wasn't prejudiced by trial counsel's failure to investigate Carlisle and her criminal history. The court reasoned that impeachment of Carlisle would have been fruitless given that Ross pled guilty to assault in the first degree. 2 SHCr 133. Respondent's view of impeachment, and that adopted by the state court, is too restrictive. They view impeachment only of a single witness, not as an attack on the future dangerousness case generally. For evidence to have mitigated in Ross's favor, it would not have had to exonerate him but only lessened the impact of the aggravating evidence. The fact that Carlisle possessed a gun on the night of the assault and had previously shot a boyfriend who died as a result of the shooting and the fact that she had been convicted of manslaughter, 2 SHCr 106, would unquestionably have lessened the impact of the assault.

The evidence of the assault of Regina Carlisle was the only evidence of any prior assaultive behavior offered at trial. The state relied heavily on the Carlisle assault to support the jury's finding of a probability that Ross would commit criminal acts of violence in the future. Specifically, the assault was offered to show that the murder of Birdsall and Ross constituted an escalation of violence by Ross. At trial, the State argued, "The best indication of the future, look at the past....We brought you evidence of a prior incident that occurred in '97. He sliced and stabbed his girlfriend." (RR vol. 41, p. 70). If this incident had been rebutted by the defense and

2

presented as being little more than self defense against a violent woman, the escalation of violence argument would have lost its impact.

The trial court's finding that "Based upon the Court's recollection of pre-trial, trial and post-trial events, the Court finds that Applicant's trial attorneys performed competently and provided constitutionally effective assistance of counsel" has no basis in fact. The trial court could not have known what investigation was done with regard to Carlisle's criminal history. It certainly did not hear any of the history at trial from any source. This finding is without a factual basis.

Respondent also alleges that Petitioner defaulted his claim that trial counsel was ineffective in failing to investigate Regina Carlisle's criminal history, although the state acknowledges that this claim was presented to the state court. Respondent's Answer, p. 23. Respondent argues that the addition of affidavits from trial counsel altered the claim presented to the state court and that the claim is not exhausted. "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999). "[A]s a general rule dismissal is not required when the evidence presented for the first time in a habeas proceeding supplements but does not fundamentally altered, the claim presented to the state courts." *Anderson v. Johnson*, 338 F.3d 382, 386-87 (5th Cir. 2003). The affidavits from trial counsel supplemented the evidence offered at state habeas but did not fundamentally alter that claim presented.

In *Morris v. Dretke*, 413 F.3d 484 (5th Cir. 2005), the issue was whether the addition of affidavits from mental health care specialists at federal habeas fundamentally altered the claim, rendering the claim unexhausted. Morris filed a successor application in the state court after

*Atkins v. Virginia*, 536 U.S. 304, 153 L.Ed.2d 335, 122 S.Ct.2242 (2002) was decided. Included with the application were school records, adaptive function testing results, references to the American Association on Mental Retardation standard for determining mental retardation and an affidavit from a psychologist saying that the foregoing evidence indicated sufficient indicators that Morris had mental retardation. The federal writ petition included another affidavit from the psychologist as well as results of testing done between the time the state writ application was denied and the time of the filing of the federal petition. Also included were affidavits from two more mental health care professionals finding Morris to be a person with mental retardation. The Fifth Circuit engaged in a fact specific inquiry and determined that the additional evidence supplemented and strengthened Morris's claim but did not alter it. Morris's claim was not barred due to failure to exhaust in the state court.

The rule in *Morris* had been applied in circumstances other than in mental retardation cases. In *Anderson*, the highest state court denied the petition without holding an evidentiary hearing. On federal habeas, an affidavit was presented from an eye witness who wasn't called at trial. The Fifth Circuit determined that the new evidence did not "fundamentally alter" Anderson's ineffective assistance of counsel claim and the claim was not procedurally barred.

In this case, the language of the claim in this court is virtually identical to that in the state application. The evidence is supplemented and strengthened by the Holder and Metz affidavits but there is no alteration of the theory of the claim. The claim was, therefore, exhausted in the state court and is not defaulted. Petitioner's first claim should, therefore, be sustained and Ross should be granted a rehearing on punishment.

**Ineffective Assistance - Failure to Investigate Mitigating Circumstances**

The State argues that Ross's second claim should be denied because Ross did not cooperate with the presentation of mitigating evidence at trial. The State misses the distinction between investigating for mitigating evidence and the presentation of that evidence. No strategic decision can be made regarding mitigation in the absence of a thorough investigation of the background of the accused. The State alleges that since Ross's family wasn't forthcoming, "counsel's decision to investigate other evidence was strategic." It cannot be a strategy not to investigate, regardless of whether the family or any other witness is cooperative.

The state court found that Ross failed to allege facts to show why trial counsel acted as they did; thus, he failed to establish deficient performance. The State does not argue that this claim has been defaulted, tacitly acknowledging that the affidavits of Holder and Metz do not change the claim made in the state court, they only supplement and strengthen it. The evidence before this court makes clear why trial counsel did what they did relative to the mitigation investigation. Lead counsel's belief that "blaming someone remote in time and place for the way an accused turns out does not work to mitigate punishment unless the evidence shows that the accused is less culpable due to the condition" (Holder affidavit) indicates a bias against investigating for and presenting mitigating evidence.

As mentioned above, the trial court's finding that Ross received constitutionally effective assistance of counsel may be applicable to evidence which was presented at trial but can not be based on any knowledge of what investigation was done by counsel into mitigating evidence. The state court adopted a Conclusion of Law which read, "Refusing to waste time on barren soil is a strategic decision." The court referred to Ross family members not being forthcoming to the defense team. Even if the family was "barren soil," there was no excuse for failing to complete

the investigation of other sources, specifically Chester Ross. It is hard to imagine stronger mitigation evidence than the family of a victim requesting that the life of the convict be spared. It is clear that the Ross family members who failed to cooperate with the presentation of evidence could not have given the testimony Milstein's affidavit attributed to Chester Ross, as they could not have known how he felt about the appropriate punishment for the man convicted of killing his daughter. The findings in this regard, made by the state court are erroneous and unsupported by any basis in fact.

Even if Ross limited the presentation of mitigating evidence, there is no evidence that he interfered with the investigation for that evidence. In fact, the evidence is to the contrary as each of the witnesses referred to in Lisa Milstein's affidavit said that they had not been contacted by anyone from the defense team. Petitioner's second claim should, therefore, be sustained and Ross should be granted a rehearing on punishment.

Respectfully submitted,

Law Office of Richard L. Wardroup LLC
1001 Main Street, Suite 707
Lubbock, Texas 79401
Phone (806)744-1911
Fax (806)762-1699

Don Vernay
Attorney at Law
1604 Golf Course Road SE
Rio Rancho, New Mexico 87124

Phone (505)892-2766
Fax (505)892-8119

By: /s/ Richard L. Wardroup
Richard L. Wardroup
SBN 20861200
Attorney for Petitioner

## CERTIFICATE OF SERVICE

This is to certify that on March 20, 2009, I forwarded a copy of the foregoing pleading to Tomee M. Heining, Assistant Attorney General, State of Texas, P.O. Box 12548, Capital Station, Austin, Texas, 78711.

/s/ Richard L. Wardroup
Richard L. Wardroup