IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

VAUGHN ROSS,

                Petitioner,

       VS.                       Cause No.    5:08-CV-174-C

NATHANIEL QUARTERMAN,        Death Penalty Case
Director, Texas Department of Criminal
Justice, Institutional Division,

          Respondent

## PETITIONER'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

COMES NOW Vaughn Ross, Petitioner in the above captioned cause, and pursuant to this Court's Order dated August 27, 2008, submits the following proposed findings of fact and conclusions of law:

## PROCEDURAL HISTORY

Mr. Ross was convicted of capital murder on September 23, 2002 for the murders of Viola Ross and Douglas Birdsall during the same criminal transaction. After accepting the jury's answers on the special issues, on September 24, 2002 the trial court sentenced Mr. Ross to death.

On May 5, 2004 the Texas Court of Criminal Appeals issued an opinion affirming the judgment and sentence imposed by the trial court. *Ross v. State,* 133 S.W.3d 618 (Tex.

Crim. App. 2004).

On March 26, 2004 Mr. Ross timely filed an application for postconviction relief in the trial court. On September 9, 2004 the State filed its answer, and on July 3, 2007 the trial court adopted the State's proposed findings of fact and conclusions of law and issued an Order denying the Petitioner's application for relief. *Ex Parte Vaughn Ross*, No. 2001-435, 653-A.

Upon Motion by counsel for Mr. Ross, on October 10, 2007 the Texas Court of Criminal Appeals issued an Order remanding the case back to the trial court to allow Mr. Ross's counsel to submit proposed findings of fact and conclusions of law and further ordering the trial court to re-examine the findings initially entered. *Ex Parte Vaughn Ross,* No. WR-60,294-01 (Tex. Crim. App. October 10, 2007)

On January 23, 2008 the Texas Court of Criminal Appeals issued an order adopting the trial court's findings and denying the application for habeas corpus. *Ex Parte Vaughan Ross,* No. WR-60,294-01 (Tex. Crim. App. January 23, 2008).

Undersigned counsel were appointed by this Court by Order filed on September 3, 2008.

On January 11, 2009 counsel for the Petitioner filed his petition of habeas corpus pursuant to 28 U.S.C. § 2254. On February 26, 2009 the State filed its Answer, and on March 20, 2009 the Petitioner filed a Response to the State's Answer.

## FINDINGS OF FACT

1.      On February 14, 2001 the Petitioner was indicted for the capital murder of Douglas

Birdsall and Viola Ross during the same criminal transaction.

2.      On March 6, 2001 Jack Stoffregen was initially appointed as the attorney for the

Petitioner.

3.      On June 4, 2001 Mr. Stoffregen was replaced by Floyd Hoder, who was retained

by the Petitioner and/or his family.

4.      Upon motion and request by Mr. Holder, on July 1, 2002 Patrick Metze was

appointed by the trial court as co-counsel for the Petitioner.

5.      Although Mr. Holder requested the trial court to appoint co-counsel, he made no

request for appointment of a mitigation investigator or psychologist, nor did Counsel

attempt to obtain a social or psychological history of Mr. Ross.

6.      Had counsel investigated Regina Carlisle, the victim of the aggravated assault

Petitioner was convicted of in Missouri, they would have discovered that she had a

significant criminal history, including the fact that she had previously assaulted at least

two other boyfriends, one of whom died of complications from a gunshot wound she

inflicted.

7.      There is no valid reason for trial counsel's failure to investigate and/or further

request the criminal history and background of Regina Carlisle.

8.      Because the incident involving Ms. Carlisle was the only evidence of violent

conduct introduced at the punishment phase of the Petitioner's trail, this failure to

investigate seriously prejudiced the Petitioner on the issue of his future dangerousness.

9.      Counsel's failure to investigate for mitigating evidence was based on his belief

that "...blaming someone remote in time and place for the way an accused turns out does

not work to mitigate punishment unless the evidence shows that the accused is less

culpable due to the condition." Exhibit C to Petition.  This failure to investigate for

mitigating evidence severely prejudiced Petitioner.

10.     Counsel's failure to present the available mitigating evidence seriously prejudiced

the Petitioner during the punishment phase of this trial.

11.     Trial counsel's statement in his affidavit that his decision not to conduct a

mitigation investigation and to focus counsel's efforts on the guilt phase of the

Petitioner's  trial was not a reasonable "strategic" decision.

12.     Had counsel engaged in a proper mitigation they would have discovered mitigating

evidence that called for a sentence lest than death, including the Petitioner's mother's use

of a belt to discipline the children; that the Petitioner  was a sensitive child who needed

his mother's affection but rarely got it and that the  Petitioner missed a male figure in his

life and felt that he didn't have one because he was not important or that something was

wrong with him.  The foregoing evidence was presented to the state court in its habeas

proceeding.

13.     Additional  mitigation evidence was readily available but not discovered by trial

counsel:

> Chester Ross, father of the victim Viola Ross would have testified that he
> didn't want Petitioner to be given a death sentence;
>
> Lydia Davis, Petitioner's maternal grandmother,  helped raise Petitioner and
> could have given depth and context to Petitioner's raising.  Specifically that
> the children raised themselves, that Petitioner had no relationship with a
> male figure and that Petitioner's mother was unable to control her anger;
>
> Marsha Green, a long-time girlfriend of Petitioner, dated Ross for three
> years.  She knew Petitioner to be mild mannered and thoughtful.  Her
> testimony could have rebutted the State's theory that Petitioner "had
> problems with women"; and,
>
> Regina Carlisle was another former girlfriend of Petitioner who was also
> the victim in an aggravated assault case to which Petitioner pled guilty in
> St. Louis, Missouri.  Testimony given by the officer who investigated the
> aggravated assault case could have been rebutted by her testimony that she
> had a propensity toward violence toward her boyfriends, that she had shot
> one of her boyfriends and he later died, that she had a gun in the vehicle in
> which the incident which resulted in Petitioner's aggravated assault plea
> occurred on the night of the occurrence and that she was engaged in car
> theft and the perpetration of other frauds.

14.     In its charge to the jury after the punishment phase of the Petitioner's trial, the trial

court charged the jury that:

> The defendant, if sentenced to a term of life imprisonment, may earn time off the
> period of incarceration imposed through the award of good conduct time.  Prison

authorities may award good conduct time to a prisoner who exhibits good
behavior, diligence in carrying out prison work assignments, and attempts
rehabilitation.  If a prisoner engages in misconduct, prison authorities may also
take away all or part of any good conduct time earned by the prisoner.

The Petitioner's counsel objected to the jury charge and the trial court overruled

the objection.

15.     The Petitioner raised the issue of the trial court's improper charge in his appeal to

the Court of Criminal Appeals based upon federal constitutional grounds. The Court of

Criminal Appeals acknowledged that the charge was erroneous, but nonetheless held that

it was not reversible error in that any confusion the charge may have caused was

restricted to the issue of the possibility of the Petitioner being released prior to the 40 year

mandatory minimum sentence provided under Texas state law.

16.     In denying the Petitioner's claims pertaining to the improper instruction, the Court

of Criminal Appeals based its decision solely on state law, without addressing the federal

questions raised by the Petitioner under *Simmons v. South Carolina*, 512 U.S. 154, 114

S.Ct. 2187, 129 L.Ed. 2d 133 (1994) and its internal reference to *Bruton v. United States*,

391 U.S. 123, 135, 88 S.Ct. 1620, 20 L.Ed.2d 476 for the proposition that, especially

when the decision to be made by a jury was whether a man would live or die, the

instructions given to assist in that determination must comprise a correct statement of the

law and not be confusing.

17.     During the guilt phase of the Petitioner's trial the prosecution elicited hearsay

testimony from the witness Ronnie Martin pertaining to the Petitioner's alleged use of a

firearm. Petitioner's counsel objected to this testimony but failed to request a mistrial

after the court sustained the objection.

18.     Immediately after the trial court granted the Petitioner's objection to the Martin

hearsay testimony, the prosecutor once again introduced the same objectionable testimony

by the use of a leading question. Counsel for the Petitioner failed to object either to the

leading nature of the question, or the hearsay answer and once again failed to request a

mistrial.

19.     During the guilt phase of the Petitioner's trial the prosecution also elicited hearsay

testimony from Liza McVade, the sister of Viola Ross, about the Petitioner's alleged use

of a gun in the presence of the victim. Counsel failed either to object to this testimony or

request a mistrial.

20.     Petitioner's trial counsel has acknowledged that his failure to object to Martin's

testimony was not a strategic decision but was inadvertent. (Exhibit C to Petition for

Habeas Corpus).

21.     Because the only evidence pertaining to the Petitioner's use of  and/or threats made

with a gun came before the jury through the aforementioned inadmissible hearsay, the

Petitioner was seriously prejudiced in the guilt phase of his trial by counsel's errors.

22.     Counsel for Mr. Ross filed two discovery motions requesting information from the

State.  Included in counsel's discovery requests were specific requests that the Petitioner

be provided with criminal records of all witnesses listed by the state.  Counsel also filed a

specific discovery motion asking for the arrest and conviction records of all of the State's

witnesses.

23.     On July 11, 2002 the trial court granted Petitioner's discovery motion.

24.     Prior to the commencement of the punishment phase of the Petitioner's trial, the

State had filed a Notice of Extraneous Offenses, Bad Acts and Prior Convictions.

Included in the notice were a series of acts pertaining to Petitioner's conviction for

Aggravated Assault committed in St. Louis County, Missouri. Ms Carlisle , the victim of

these acts, had been listed as a witness by the State as early as July 24, 2002 in the State's

1st Supplemental Witness List.

25.     Notwithstanding the fact that counsel for the Petitioner was on notice that Ms.

Carlisle was to be called by the State, and counsel had an order from the trial court

allowing him discovery of her criminal history, counsel made no effort either to force the

prosecution to disclose Ms. Carlisle's criminal history, to interview her or to conduct an

investigation into her background.

26.     Although Ms. Carlisle was consistently listed by the State as a testifying witness,

in contravention to the trial court's order granting the Petitioner access to her arrest record

or criminal history, which included assaults on former boyfriends, and directing the

prosecution to provide it to the defense,  the prosecution did not provide defense counsel with that information

27.     The prosecution's failure and/or refusal to provide Petitioner's counsel with Ms. Carlisle's arrest record and criminal history seriously prejudiced the Petitioner's case, in light of the fact that the incident involving Ms. Carlisle was the only evidence of violence introduced by the prosecution in support of its argument for future dangerousness and the Petitioner was deprived of the ability to impeach Ms. Carlisle with facts which would have case serious doubts upon her credibility.

28.     During the punishment phase of the Petitioner's trial the State presented testimony from Officer Kevin Knobbe, the officer who responded to the assault on Regina Carlisle allegedly perpetrated by the Petitioner.

29.     Rather than calling Ms. Carlisle as a witness, the prosecution instead presented the facts surrounding the alleged assault on her by the Petitioner through hearsay statements made by Ms. Carlisle to Officer Knobbe after he responded to the scene of the alleged assault.

30.     Petitioner's counsel's initial objection to Officer Knobbe's testimony on hearsay grounds was overruled by the trial court on the grounds that Ms. Carlisle's initial statements were excepted to the hearsay rule as an excited  utterance.

31.     Petitioner's counsel objected to other statements made by Ms. Carlisle and this

objection was sustained, but counsel failed to object or to request a continuing objection when the prosecution elicited the same hearsay information through improper questions to the witness.

32.     Because the incident involving Ms. Carlisle was the only evidence of violence introduced by the prosecution in support of its argument for future dangerousness, the Petitioner was seriously prejudiced by his counsel's failure to raise the necessary objections to Office Knobbe's testimony.

## CONCLUSIONS OF LAW

**First Claim for Relief**

1.      The State court's conclusion of law that "[A]pplicant has failed to set forth facts establishing deficient attorney performance and/or prejudice" (SHCR vol. 1, p. 134) constituted a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The evidence is clear that trial counsel made no effort to discover Regina Carlisle's background or the circumstances of the offense committed against her by Petitioner.  As habeas counsel learned, learning about Ms Carlisle was as simple as taking a trip to St. Louis.  Trial Counsel's failure to employ an investigator to investigate the circumstances of the aggravated offense satisfies the first prong of the *Strickland* analysis.

2.      The State court's conclusion of law that a "potential attack on Ms Carlisle's

credibility concerning Applicant's stabbing of Ms Carlisle and the taking of her car did

not result in prejudice to Applicant's defense." (SHCR vol. 1, p. 133), constituted a

decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceeding.  This conclusion is based on

determinations that, since Petitioner pled guilty to the aggravated assault where Carlisle

was the victim, her testimony would not have been subject to impeachment.  The context

of the offense which Petitioner pled guilty would have had mitigating effect as the jury

would have learned that Carlisle was armed with a gun at the time of the offense and that

she had used a similar weapon against another boyfriend in the past.  Trial counsel's

failure to discover this evidence prejudiced Petitioner such that the state court's resolution

of this issue was objectively unreasonable.

Petitioner has proved facts to establish deficient attorney performance -

specifically, the decisions relative to the lack of mitigation investigation, which the State

claims are strategic choices violate the terms of the ABA Guidelines.  Evidence shows

that Counsel's decision to forego a mitigation investigation, while a conscious decision,

was not a reasonable choice.

**Second Claim for Relief**

3.      The State court's conclusion of law that "[A]pplicant fails to allege facts to

establish deficient attorney performance." (SHCR vol. 1, p. 123) constituted a decision

that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The State Court's Findings of Fact and Conclusions of law focused almost exclusively on the nature and degree of mitigating evidence actually offered at trial. The lack of a meaningful investigation was not dealt with except to say that "[A]pplicant failed to establish how his trial counsel's investigation was deficient." As an example, Respondent argued that Petitioner's mother told trial counsel to "leave her alone." This exchange occurred after the verdict of guilty of capital murder had been returned, not during the time that a mitigation investigation should have been conducted. The failure to investigate is what caused Petitioner prejudice in this case.

4.      The State court's conclusion of law that "[A]pplicant was competent, yet, Applicant blocked his attorneys' attempts to present punishment evidence. Thus, he cannot now claim that his attorneys were ineffective in failing to present pertinent punishment evidence" (SHCR vol. 1, p. 124) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding when applied to the **investigation** issue of this claim. Specifically, while it may be argued that Petitioner's lack of cooperation at the punishment phase of the trial excused counsel's failure to present evidence, that lack of cooperation cannot be said to justify failing to investigate for mitigating information. This is especially true in

light of the mitigating evidence developed by State habeas counsel.  There is no evidence that Petitioner blocked his attorneys' attempts to investigate mitigation evidence prior to trial.

5.     The State court's conclusion of law that "the mitigating effect of the potential evidence was greatly outweighed by the aggravating circumstances of Applicant's prior criminal conduct and the premeditated nature of the murders" (SHCR vol. 1, p. 127) constituted a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The mitigating evidence included the fact that the father of one of the victims did not want Petitioner to receive a death sentence.  It cannot reasonably be said that testimony would not have moved the jury to a life sentence.

6.     The State court's conclusion of law that "[A]pplicant is unable to show that, if the newly proffered mitigation evidence had been presented, there is a reasonable probability that result of the sentencing phase would have been different." (SHCR vol. 1, p. 128) constituted a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

7.     The State court's conclusion of law that "[A]pplicant cannot establish prejudice, since he has not shown what the other witnesses would have testified to if they had not been dissuaded from testifying by Applicant."  (SHCR vol. 1, p. 125).  There is no

authority cited for the proposition that, where one convicted of capital murder instructs

witnesses not to cooperate with trial counsel, habeas counsel must prove what the

witnesses would have said in order to prove that the evidence developed by habeas

counsel would not have been cumulative.

**Third Claim for Relief**

8.     The conclusion of law by the Court of Criminal Appeals, that "...we do not find

that the jury was so misled or that there is a reasonable likelihood that the jury applied the

misleading parole charge in a way that prevented it from considering that a life-sentenced

appellant would not be eligible for parole for 40 years." *Ross v. State*, 133 S.W.3d 618,

624 (Tex. Crim. App. 2004) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States. The law relative to confusing jury instructions in a

capital case was set out in *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129

L.Ed. 2d 133 (1994) which cites  *Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct.

1620, 20 L.Ed.2d 476.  The standard to be applied in in these circumstances is set out in

*Wiggins v. Smith,* 539 U.S. 510, 12 S. Ct. 2527, 156 L.Ed.2d 471 (2003) and *Tennard v.

Dretke,* 542 U.S. 274, 124 S. Ct. 2562, 159 L.Ed.2d 384 (2004)

**Fourth Claim for Relief**

9.     The State court's conclusion of law that approved the trial court's finding that:

"[B]ased on the relative unimportance of the hearsay statement, the cumulative nature of the testimony, and the overwhelming evidence of Applicant's guilt, the alleged error is harmless" (SHCR vol. 1, p. 138) constituted a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Martin's testimony, that he overheard a Mr. Garner say that Petitioner had pulled a gun was the only testimony from a disinterested witness that Petitioner had possessed a gun. Martin's testimony was not cumulative because the only other testimony that Petitioner had possessed a gun was the uncorroborated hearsay statement of a victim's sister.

**Sixth Claim for Relief**

10.     The State court's conclusion of law that applicant "has failed to allege facts that establish deficient attorney performance." (SHCR vol. 1, p. 139) constituted a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The record is clear that trial counsel did not choose a strategy which purposely waived hearsay objections.  This deficiency on trial counsel's part prejudiced Petitioner by allowing an incomplete recitation of the facts of the assault be admitted before the jury.

11.     The State court's conclusion of law that  "Applicant has failed to establish prejudice in failing to preserve error, since the error was harmless." (SHCR vol. 1, p. 139) constituted a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the state court proceeding.  The context of the events

which resulted in Petitioner being charged with aggravated assault against Regina Carlisle

was wholly lost due to trial counsel's failure to continue to object.

12.     The evidence presented in support of the Petition shows that there is a reasonable

probability that the result of the sentencing phase would have been different but for trial

counsel's errors.

### CONCLUSION

For the forgoing reasons and those articulated in the Petition for Writ of Habeas

Corpus and accompanying brief, Petitioner prays that this court grant his petition and

order that his sentence be reversed and a new trial ordered.

RESPECTFULLY SUBMITTED this 15th day of April, 2009.

**RICHARD L. WARDROUP**
Attorney at Law
1001Main Street, Suite707
Lubbock, TX 79401
(806) 744-1911
(806) 762-1699   (facsimile)
By: /s/Richard L. Wardroup
     Richard L. Wardroup
     State Bar No. 20861200
     Counsel for Mr. Ross

**DON VERNAY**
Attorney at Law
1604 Golf Course Road SE
Rio Rancho, NM 87124

(505) 892-2766
(505) 892-8119 (facsimile)
By: /s/Don Vernay_____
        Don Vernay
        State Bar No. 24035581
        Co-Counsel for Mr. Ross

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2009, I electronically filed the foregoing

pleading using the electronic case filing system of this Court. In turn, a "Notice of

Electronic Filing" was generated and sent to the following attorneys of record who have

consented in writing to accept the Notice as service of this document by electronic means:

Tomee Heining
tomee.heining@oag.state.tx.us

Laura Haney
laura.haney@oag.state.tx.us


                                    /s/Richard L. Wardroup_____
                                    Richard L. Wardroup